UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
OCT 1 9 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-560-GWU

HELEN B. SMITH,                                                                               PLAINTIFF,

VS.                             **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                     DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Smith

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

Smith

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

Smith

> whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Smith

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Smith

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

Smith

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Helen B. Smith, a 63-year-old individual with a high school equivalency diploma, filed an application for DIB on January 9, 2002, alleging disability beginning January 1, 2002 due to a stroke and heart disease. (Tr. 36, 71, 93). After her application had been denied initially and on reconsideration, she requested and received a hearing before an Administrative Law Judge (ALJ), who issued a decision dated October 22, 2003 finding that the plaintiff had been engaging in "substantial gainful activity" after her alleged onset date. (Tr. 23). Alternatively, the ALJ found that, although the plaintiff had a "severe" combination of impairments consisting of a history of hypertension, hyperlipidemia, and a history of the cerebrovascular accident and a myocardial infarction, she had, nevertheless, retained the residual functional capacity to return to her past relevant work as an owner/operator of the trucking company and owner/operator of a grocery store. (Id.).

7

Smith

In either event, she was not entitled to benefits. The Appeals Council declined to review, and this action followed.

For the reasons set out below, the Court concludes that substantial evidence supports the ALJ's determination.

"Substantial work activity" is defined by the Commissioner's regulations as "work activity that involves doing significant physical or mental activities," while gainful work activity is defined as "work activity that [is done] for pay or profit." 20 C.F.R. Sections 404.1572(a); 404.1572(b) (2004). If the work requires a claimant to use "experience, skills, supervision, and responsibilities," or will "contribute substantially to the operation of the business, this tends to show that . . . [the] work [is] . . . substantial gainful activity." Id. however, if the work involves "minimal duties that [make] little or no demands on [the claimant] and that are of little or no use to [the] employer, or to the operation of the business if [the claimant is] self-employed," it tends to show that the work is not substantial gainful activity. 20 C.F.R. Section 404.1573(b).

The plaintiff testified at the August 28, 2003 administrative hearing that she had not performed any work since her alleged onset date of January 1, 2002. (Tr. 36). She stated that she used to own a trucking company, but sold the business "three or four years ago." (Tr. 37). She had also owned a small, rural grocery store with three to four employees, which had closed in March or April of 2002. (Tr. 37-

8

Smith

40). She asserted that she had not been helping to run the store at the time it closed. (Tr. 40). However, she continued to own the store building, which also contained four rental apartments, and she estimated her income from the rental of these units at $700.00 to $800.00 per month, depending on whether they were all rented and whether the tenants paid. (Tr. 41-3). Her testimony was that she did not do any work on the apartments, and had to call someone if something needed fixing, although this rarely happened since the apartments were "practically new." (Tr. 41-2). She obtained tenants primarily by word-of-mouth, but had run some newspaper advertisements, and was responsible for collecting rent, although the renters would bring the money to her. (Tr. 42).

In addition to the plaintiff's testimony, there was also an indication in an office note by Dr. Talmadge Hays on March 26, 2002, that the plaintiff was continuing to run her own business. (Tr. 385).

Under the standards set out in the regulations, therefore, the above factors are substantial evidence to support a conclusion that the plaintiff was engaging in significant physical or mental activities for pay or profit, and that her experience and responsibilities contributed substantially to the operation of the business. While it could also be argued that her duties were not particularly demanding, the issue on appeal is whether there is substantial evidence to support the ALJ's conclusion, and there clearly is.

9

Smith

In any event, even if the analysis is continued through the remainder of the sequential process, the ALJ's finding that the plaintiff could perform her past relevant work is also supported by substantial evidence.

The plaintiff reported that she could not work after a January, 2002 stroke because she no longer had energy enough to get off her couch. (Tr. 43). She was not sure why her fatigue was related to her stroke, but she also complained of some residual symptoms from the stroke, such as "a little bit" of problems with the vision in her left eye, and some problems with balance. (Tr. 46-7). However, none of her treating sources, including Dr. Madhan Mohan or Dr. William Brooks, suggested any permanent functional restrictions as a result of her cerebrovascular accident. (E.g., Tr. 232-3, 261, 364). A consultative physical examiner, Dr. Wendy French, found no neurological or other abnormalities in an April 6, 2002 evaluation. (Tr. 379). Specifically, the plaintiff had a normal gait, normal heart sounds, no physical evidence of congestive heart failure, a normal neurological evaluation including rapid alternating movements, no sensory or reflex abnormalities, and no motor weakness on the left versus the right side. (Tr. 378-9). The only abnormal finding was decreased breath sounds, but a pulmonary function test was interpreted as showing only mild obstructive disease. (Tr. 379, 381). Dr. French concluded that there was no evidence for any physical restriction. (Tr. 379-80).

10

Smith

Two state agency physicians reviewed the record. Dr. J. E. Ross opined on April 29, 2002 that the plaintiff did not even have a "severe" impairment. (Tr. 387-8, 398). Dr. Timothy Gregg opined on June 26, 2002 that the plaintiff would be capable of medium level work, could never climb ladders, ropes, or scaffolds, and would need to avoid concentrated exposure to extremes of cold and heat, and avoid even moderate exposure to hazards such as machinery or heights. (Tr. 389-96). No greater restrictions are in the record, and when the ALJ presented Dr. Gregg's restrictions to a vocational expert at the administrative hearing, he responded that the plaintiff could perform all of her past relevant work. (Tr. 52-3). Accordingly, this portion of the ALJ's decision is also supported by substantial evidence.

The decision will be affirmed.

This the __/9__ day of October, 2005.

G. WIX UNTHANK
SENIOR JUDGE

11